## Kless *v.* Youghiogheny Mining Company, Appellant.

*Mines and mining—Certified fire boss—Mine foreman—Act of May 15, 1893, P. L. 52, art. 5, sec. 2.*

Under the Act of May 15, 1893, P. L. 52, sec. 2, art. 5, the superintendent of a mine cannot delegate his statutory duties to the mine foreman, but must consult with him and join in the appointment of a competent person— a certified fire boss—who shall make the examination of the mine.

In an action to recover damages for the death of a boy sixteen years old, caused by the explosion of gas in a mine, the case is for the jury and a verdict and judgment for plaintiff will be sustained where the evidence tended to show the presence of explosive gas in the mine in dangerous quantities for at least four days prior to the accident; that this gas had accumulated in a room within about thirty feet of the entry where the deceased was killed, and where naked or open lights were used by the miners without objection by the superintendent; and that a person who was not a certified fire boss, had been employed as fire boss by the mine foreman with the knowledge of the superintendent.

Argued April 15, 1901.   Appeal, No. 36, April T., 1901, by defendant, from judgment of C. P. Fayette Co., Dec. T., 1899, No. 289, on verdict for plaintiffs in case of Jacob Kless and Margaret Kless, his Wife, Parents of John Kless, Deceased, v. Youghiogheny Mining Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before UMBEL, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiffs for $1,230. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*George D. Howell,* for appellant.—The proximate cause of the explosion was not any act of Davis but was due to the manner in which the gas was handled after its presence was fully known to the mine foreman. The employment of Davis was not the proximate nor even the remote cause of the explosion: West Mahanoy Twp. v. Watson, 112 Pa. 574; Behling v.

Southwest Penna. Pipe Lines, 160 Pa. 359; Harrison v. Van Gunten, 15 Pa. Superior Ct. 497; Leidy v. Quaker City & Warehouse Co., 180 Pa. 323.

*James R. Cray,* with him *D. W. McDonald,* for appellees. —The question whether or not the employment of Davis contributed to the cause of the accident was correctly submitted by the court: Trainor v. Phila., etc., R. R. Co., 137 Pa. 148; Com. v. Hutchison, 4 Pa. C. C. Rep. 18.

OPINION BY ORLADY, J., January 21, 1902:

On August 18, 1899, John Kless, aged sixteen years, while in his proper place in the regular performance of the duties of his employment as driver or hauler in the bituminous coal mines of the defendant, was so seriously injured by an explosion of gas that he died soon after. The plaintiffs allege that the defendant company knew or should have known that the place where the explosion occurred was dangerous by reason of the accumulation of gas, and that it did not use due and proper care in protecting its employees. The entry was clear of gas and the miners were using open lights, though danger notices were posted at the opening of a communicating room. The accident occurred while the driver was passing this room on entry 16, and was caused by the gas escaping thence and becoming ignited by the open lamp which he carried. The gas was considered dangerous and, on August 14, a cut-through was started from room 3 so that the ventilation of the mine would carry it away, which work was not completed until after the accident. It was contended that because the gas was never closer than thirty feet to the entry, that it was a safe mine in which to work with naked lamps. Two fire bosses had been previously employed to make the required daily examinations, but one of them left about two weeks before the accident, his duties being discharged by one Davis, who, it is admitted, was not a qualified person under the act of assembly to perform the duties of fire boss. Davis was employed by the mine foreman, James Henderson, who also acted as fire boss for the south side of the mine. Henderson was given authority by the defendants, through the superintendent of the mine, to judge of the necessity for and employment of fire bosses. The daily reports

made by Henderson, offered in evidence by the defendant, showed that from August 14 to 19, there was explosive gas in room No. 3, entry 16, of a depth of two and a half feet and extending over sixty feet back, and that the blower was giving off gas, which condition continued without substantial change until after the accident, all of which information was given to the defendants by the daily report on their printed blank which was headed, "exceptionally dangerous and general remarks."

The Act of May 15, 1893, P. L. 52, provides by article 5, section 2, "In all mines wherein explosive gas or fire damp has been generated in sufficient quantities to be detected by the ordinary safety lamps, every working place shall be examined immediately before each shift by a competent person or persons appointed by the superintendent and mine foreman for that purpose. The person or persons making such examination shall have a fire boss certificate of competency . . . . and said examination shall be begun within three hours prior to the appointed time of each shift commencing to work," and by article 5, section 5, "the use of open lights is also prohibited in all working places, roadways, or other parts of the mine through which fire-damp might be carried in the air current in dangerous quantities."

The superintendent cannot delegate his statutory duties to the mine foreman, but must consult with him and join in the appointment of a competent person—a certified fire boss—who shall make the examination. The appellant admits that some of the duties of a fire boss were performed by Davis for the reason that the mine foreman was unable to secure a duly certified one.

A mine cannot be said to be good or free from danger in which explosive gases are known to be present in the volume proved in this case, and when within but thirty feet of the open entry where naked or open lights are used by the miners without objection by the superintendent; it would have been clear error for the court to have affirmed the plaintiff's first point. Had the statutory mandate been followed, the appellant might urge with more show of reason that the employment of a fire boss who had no certificate as such did not contribute in a large measure to this accident, and the jury could find under the evidence in the present case that the employment of such a person, and the

placing of him in charge of such an important branch of a mining operation, was the natural and probable cause of the accident. The report book of the mine foreman, sent to the jury at the request of the defendant, stated the presence of explosive gas in dangerous proximity to the entry, to which, and to the open lamp, it might reasonably be expected to be communicated by very slight variations of air currents.

The error of judgment of the mine foreman, as such, was a question for the jury, when taken in connection with the fact that the whole duty of the owner and operator had been deputed to him, in addition to his duty under the statute. The remark of the trial judge, of which complaint is made, viz : " it seems that the mine was recognized as such (a gaseous mine) " was not error in the light of the testimony adduced from the defendant's witnesses and the daily reports, which had been examined by the superintendent and offered in evidence by the defendant. There was no controversy in regard to the presence of explosive gas in dangerous quantities for at least four days prior to the accident, nor that the defendant was providing for the safety of the miners by removing it. The part of the charge complained of in the fourth assignment of error should be joined with the concluding part of the incomplete thought which immediately follows it, viz : " However, as we will notice presently, the company is not responsible for the mine foreman in the selection of this incompetent assistant unless this negligence of the foreman was brought later to the notice of the company or their superintendent. If the superintendent knew that the mine foreman had employed an assistant who was not properly qualified, it was his duty forthwith to attend to having the matter corrected, and if he did not do so, the company would be chargeable with the consequence for the injury or damage occasioned by the failure of the superintendent to do so. . . . Such negligence was the negligence of the defendant company as soon as it was brought to the notice of their superintendent." The jury was instructed that if the accident had occurred by reason of the mine foreman, their verdict must be for the defendant, since the mine foreman was nothing more or less than a fellow-servant or coemployee with John Kless, the boy who was killed.

The question was purely one of fact for the jury, and there is ample evidence to sustain the verdict.

The assignments of error are overruled and the judgment is affirmed.